Drake *v.* Curtis.

ANDREW DRAKE *vs.* JOHN CURTIS.
TISDALE DRAKE *vs.* SAME.

The provision of the Rev. Sts. *c.* 93, § 14, that when the demandant, in a real or mixed action, shall die before final judgment, his heir may appear and prosecute the suit, does not extend to a devisee of such demandant.

It is not erroneous in a judge to decline instructing the jury, in the manner requested by either party, when the instructions prayed for are not founded in the evidence, or are not applicable to the case.

The entering upon unenclosed flats, when covered by the tide, and sailing over them with a boat or vessel, for the ordinary purposes of navigation, is not such an open, notorious, exclusive and adverse possession, as is necessary to constitute a disseizin.

THESE were real actions, brought for the recovery of a certain wharf, dock and flats in Boston. The demandant in the first entitled action having died, leaving a will by which he devised his real estate, including the premises in question, to the demandant in the second action, the latter made a written application to the court, for the purpose, and was thereupon admitted, (subject to the opinion of the whole court,) to come in and prosecute the suit.

Certain preliminary proceedings having taken place, by which the legal side lines of the demandants' estate across the flats had been settled, — which proceedings are sufficiently

stated in the opinion of the court,—both causes were submitted together to the same jury upon the question of disseizin, and were tried before *Wilde,* J., at the November term, 1846. The report of the judge is substantially as follows :

The tenant, in order to show a disseizin of the demandants, read in evidence, among others, a deed from Jabez Hatch to himself and Thomas Ridley, (whose estate had since become vested in the tenant by mesne conveyances,) in which deed, the premises conveyed, including the demanded premises, were described by metes and bounds,.and then introduced the testimony of William H. Prentice, Samuel Abbott, and others, as to the extent, duration, and manner of occupation and use, of the wharf, dock and flats in question, by Jabez Hatch and those (including the tenant) who held under him.

The first named witness testified, that he had known the premises since the year 1803 ; that he lived with Mr. Hatch, until the year 1806 ; that, from 1806 to 1809, he lived in the house at the head of Drake's Wharf,* and carried on business on Hatch's South Wharf ; that he had lived in South Street and East Street ever since, and had been familiar with the premises. He described the extent and dates of the erections and additions to the wharf, from time to time, and the use of the dock and flats and sides thereof ; and, among other things, stated, that vessels frequently lay at the end of the wharf, to wait and get ready to go into the sides, and take off parts of their loads ; that he had himself taken wood from vessels lying at the end of the wharf, before the Cobb Wharf was built ; and that he had seen them lying at the end of the Cobb Wharf.

Samuel Abbott, who was eighty-five years of age, and had lived in Sea Street (from whence he removed twenty years ago) thirty-five years, testified, that he did his business in the territory of Mr. Hatch, and described the time when and the distance to which the wharf had been extended, and the use and occupation of the docks, wharf and flats. He stated that

---

* This and other references, in the statement, to local objects which could only be fully explained by means of a plan, are not essential to an understanding of the cause.

Drake *v.* Curtis.

" he had seen vessels at the end of the wharf, two or three deep, when the weather was bad, or a want of wind."

Upon this, with other evidence, not material to be here stated, derived from the plans, deeds and documents, which were exhibited and used on the trial, the tenant requested the judge to instruct the jury in the following terms :

" That if the jury are satisfied, on the whole evidence, that the tenant and those under whom he claims entered upon and took and held visible and exclusive possession of part of the demanded premises, and exercised acts of open and exclusive ownership therein ; and, as to the residue of the premises, used and enjoyed the same by passing over them with vessels to and from his wharf, with intent thereby to possess and hold the whole premises, on a claim of right, and by regular paper title, up to the present line ; and if the jury are further satisfied, that the demandants or those under whom they claim had full notice of such entry, possession and claim, and, by conveyances and other equivalent acts, recognized and yielded to such claim and possession, and that such possession had continued for thirty years before the commencement of this suit, it amounted to a disseizin of the whole premises, and that they ought to find a verdict accordingly for the tenant."

The tenant also requested the court to instruct the jury, that, upon the evidence in the case, it was competent for them to find a disseizin of the whole premises by the tenant.

The court declined giving the instructions thus requested, but instructed the jury, " that, as against the demandants, who were the true owners, the disseizin extended no further than the wharf, and the flats and dock occupied by vessels lying at the wharf ; that, though there might not be sufficient evidence of vessels having lain at the end of the Cobb Wharf after it was extended in 1808, yet, as the purpose of a wharf was to have vessels come to and lie at it, the jury might infer, that the end of the wharf was so used, and might allow to the tenant, as a disseizor, space enough at the wharf to turn a vessel, or to lay two or three vessels there."

Under these instructions, the jury returned a verdict, in each case, as follows :

" The jury find that the tenant has obtained possession of the wharf and flats in controversy, down to the end of the Cobb Wharf, as it now exists, and one hundred and twenty feet beyond. They also find the line of Sea Street to be the most easterly line as shown on the plans."

Formal verdicts were thereupon drawn up and entered, by direction of the court, in each case, that the tenant did disseize the demandant of a certain parcel of land or flats (describing the same), being parcel of the land or flats demanded in the suit, and that as to the residue, the tenant did not disseize the demandant.

If the court should be of opinion, that the instruction, as to the point of disseizin, was not sufficiently favorable to the tenant, a new trial is to be ordered on that point.

If the court should be of opinion, that the instruction, upon the facts proved, as to allowing the tenant room to swing a vessel, or to lay vessels at the end of his wharf, was incorrect, or that the finding of the jury did not warrant the verdicts entered, the verdicts are to be amended by the court, so as to conform to the law, and the rights of the parties.

These causes were argued partly at the bar, and partly in writing, by *D. Webster, S. Bartlett,* and *R. Choate,* for the tenant ; and by *R. Fletcher,* and *B. R. Curtis,* for the demandants.

*S. Bartlett,* for the tenant.

An entry, under such a deed as that by which the tenant claims, makes the party entering a disseizor of the part entered upon ; and the doctrine of the courts of the United States, and of some of the state courts, therein differing from the principles established in this commonwealth, extend the disseizin so created to the whole premises embraced in the deed. In the present case, however, it will not be necessary to revise the rule, which has heretofore been laid down by this court, respecting disseizin ; but only to apply the same to the new state of facts involved in the tenant's prayer for instructions

The instructions requested by the tenant assume the following facts, as the elements necessary and sufficient to constitute a disseizin : 1st, that the entry of the tenant, and his acts, as regards both the portion exclusively occupied by him and his predecessors, and that partially so occupied, were under a regular paper title, and a claim of right, which embraced and called for the whole premises ; 2d, that the demandants had full notice of the entry and possession, on the part of the tenant, and of the extent and character of his claim, under that conveyance ; and 3d, that the demandants, by conveyances and other acts, recognized and yielded to such claim and possession, on the part of the tenant.

1. Disseizin being dependent upon the intent of the party, the value of an entry under a recorded deed, or a paper title, containing definite boundaries, as compared with a mere intrusion, in its bearing upon the question of disseizin, must be determined by the intent. Where an entry is made without deed, the intent corresponds with the acts of the party. But, where it is made under a deed, the extent of the party's intention is determined by what the deed professes to convey. Hence it has been decided, in the courts of the United States, and in those of some of the states, that a disseizin effected under a claim of title, in virtue of a deed, or other instrument, is in general coëxtensive with the description of the premises conveyed. *Ellicott* v. *Pearl,* 10 Pet. 412 ; *Ewing* v. *Burnet,* 11 Pet. 41 ; *Jackson* v. *Porter,* Paine, 457 ; *Prescott* v. *Nevers,* 4 Mason, 326, 330.

There is no case, indeed, to be found in our own reports, founded in the distinction between an entry under a paper title, and a mere intrusion ; but the distinction is clearly implied, though collaterally and incidentally, in the cases of *Allen* v. *Holton,* 20 Pick. 458, and *Kennebeck Purchase* v. *Springer,* 4 Mass. 416.

The precise point was raised and elaborately argued in the case of *Bates* v. *Norcross,* 14 Pick. 224, but the court declined going into the question.

The distinction made in some of the cases above cited,

between conveyances of large tracts of wild land, and of farms or smaller tracts for improvement and cultivation, is a sound one. The tenant, in the present case, only claims a disseizin coëxtensive with the intent.

2. The weight, to which the fact of notice is entitled, as an element of disseizin, has not heretofore been passed upon. But it is the distinguishing characteristic of all acts necessary to constitute a disseizin, that they carry notice to the true owner and to all the world ; and such has been the uniform current of the decisions. *Kennebeck Purchase* v. *Springer*, 4 Mass. 416 ; *Pray* v. *Pierce*, 7 Mass. 381 ; *Poignard* v. *Smith*, 6 Pick. 172 ; *Coburn* v. *Hollis*, 3 Met. 125 ; *Piper* v. *Richardson*, 9 Met. 155.

The doctrine of disseizin depends upon the intent of the disseizor, as settled by the terms of his deed, and upon the knowledge of such intent, by the disseizee ; and, therefore, if acts be done by one claiming under a deed, which, if done by an intruder, would be equivocal, and notice of the character of these acts, and of the deed under which they are done, be given to the other party, such acts cease to be equivocal, and amount to a disseizin.   So, where the acts done on a part of the premises are unequivocal, and those done on another part equivocal, the same consequence must result, provided the nature and character of the latter be brought home to the party.

3. The demandants' recognition, by their acts, of the tenant's claim, and their yielding thereto for thirty years, are tantamount to equivocal acts, with notice of their character, and of the claim under which they are done.   See *Coburn* v. *Hollis*, 3 Met. 125.

As to the general question of disseizin, the counsel referred to Angell on Limitations, 415, 428, 431, 433, 440, 447 ; 19 Am. Jur. 41, 44, 262 ; *Boston Mill Corp.* v. *Bulfinch*, 6 Mass. 229 ; *Brimmer* v. *Prop'rs. of Long Wharf*, 5 Pick. 131 ; *Rust* v. *Boston Mill Corp.*, 6 Pick. 158 ; *Sparhawk* v. *Bullard*, 1 Met. 101 ; *Piper* v. *Richardson*, 9 Met. 155 ; *Jackson* v. *Woodruff*, 1 Cowen, 276 ; *Jackson* v. *Oltz*, 8

Wend. 440 ; *Kennebeck Purchase* v. *Laboree*, 2 Greenl. 275 ; *Farrar* v. *Eastman*, 1 Fairf. 191 ; *Riley* v. *Jameson*, 3 N. H. 23 ; *Lund* v. *Parker*, Same, 49.

*B. R. Curtis*, for the demandant.

The preliminary question, as to whether the devisee was rightly admitted, depends upon the construction of the Rev. Sts. *c.* 93, § 14, and *c.* 62, § 2, the first of which gives the heir a right to come in, and the second puts the devisee upon the same footing with the heir.

The principal question has been argued on the ground, that if the proposition contained in the prayer for instructions was right, the refusal to give the instructions was erroneous. But, admitting the correctness of the instructions prayed for, as an abstract proposition, yet, if there were no facts in the case to call for them, or if they were not pertinent or relevant to the facts, the refusal was proper.

The party objecting to the ruling is bound to show, that such facts were in evidence, that the instructions prayed for referred to such facts, and that they were applicable to the case.

The *prima facie* aspect of the case was, that the demandants never yielded to the possession of the tenant. There was no evidence that they had ever done so. If the burden were on the demandants to show that they had never yielded, it would only be necessary for them to deny the existence of any such facts, and to ask the court to look at the evidence.

If the judge, who tried the cause, had given the instructions prayed for, he should have told the jury, at the same time, that there was no evidence before them, to which the instructions could apply.

It is said by the tenant's counsel, that the court are not called upon, by the argument for the tenant, in the present case, to decide otherwise than they have heretofore held, as to the law of disseizin. But the three elements, which he lays down, are not alone sufficient to constitute a disseizin. There must also be ouster or its equivalent.

Sailing over the premises with boats or vessels is not an act

34*

of ownership, but a use of the flats as a part of the great
public highway of navigable waters, and cannot amount to a
claim of possession.  But the ordinance of 1641, under
which the title to flats is claimed, provides for this very case,
by saving the right to pass over the flats to other men's houses
or lands.  *Deering* v. *Prop'rs. of Long Wharf,* 12 Shep. 51,
64.  The use of the flats, therefore, amounts to nothing, and
the case must be so considered.

The question, then, is whether a fourth element is not
necessary, to wit, ouster, in order to constitute a disseizin.

It is true, that, in the courts of the United States, and in
those of some of the states, a different rule is held, founded in
the ancient doctrine, that a feoffment with livery of seizin
amounts to a disseizin.  The principle was, that a charter of
feoffment, with an entry under it, accompanied by livery of
seizin, worked a disseizin.  The courts alluded to, adopting
this doctrine, have held that a deed of conveyance duly
recorded was equivalent to a feoffment with livery, and con-
sequently that an entry and possession under such a deed were
coëxtensive with the description in the deed, and worked a
disseizin of the whole.

In the case of *Bates* v. *Norcross,* 14 Pick. 224, the atten-
tion of the court was called to the old doctrine, but they did
not adopt or sanction it.  They say : " Whether a feoffment
would have the effect supposed, at the present day, is a ques-
tion upon which learned jurists disagree, but which it is not
necessary to consider in the present case."

The authorities cited on the other side, being founded in the
old doctrine, that a deed of feoffment, with livery of seizin, ef-
fects a disseizin, are not applicable here, unless the court should
now be willing to sanction and adopt that doctrine.  If not, it is
impossible to avoid the conclusion, that ouster is a necessary
element to constitute a disseizin as against the true owner.
*Kenn. Purch.* v. *Springer,* 4 Mass. 416 ; *Brimmer* v. *Prop'rs.
of L. W.,* 5 Pick. 131; *Coburn* v. *Hollis,* 3 Met. 125 ;
*Slater* v. *Rawson,* 6 Met. 439 ; *Jackson* v. *B. & W. R.
Corp.,* (not reported, but referred to by Wilde, J., 1 Met. 99

and 6 Met. 447);* *Sparhawk* v. *Bullard*, 1 Met. 95; *Bost. & Wor. R. C.* v. *Sparhawk*, 5 Met. 469; *Wheeler* v. *Stone*, this volume, 313.

But this doctrine is aside from the question in the present case; there being positive facts in evidence, which show that the instructions prayed for were properly refused. The demandants had always been in possession of a part of the premises, having entered under deeds, which conveyed a true title to the whole; the tenant had entered and been in possession of a part, under what was not a true title; and a part remained vacant. The principle is, that where two parties are in possession, each of a part of the land, and a part is vacant, the law attributes the seizin to him who is the true owner. Litt. § 701. This principle was recognized and applied in the cases of *Brimmer* v. *Prop'rs. of L. W.*, 5 Pick. 131; *Green* v. *Liter*, 8 Cranch, 229, 231, 250; *Barr* v. *Gratz*, 4 Wheat. 213; *Gibson* v. *Martin*, 1 Har. & J. 545; *Moss* v. *Currie*, 1 Dana, 266; *Harrison* v. *M'Daniel*, 2 Dana, 348; *Chiles* v. *Jones*, 7 Dana, 528; *Deering* v. *Prop'rs. of L. W.*, 12 Shep. 51, 64.

*D. Webster*, for the tenant, submitted the following argument in writing:

No suggestion having been made at the trial, that the tenant had not produced evidence sufficient to raise the question presented by the prayer for instructions, but the point having been ruled upon simply as a matter of law, and as supposing the alleged facts to be proved, it must now, of course, be so understood; for, if the judge had suggested any deficiency of proof to raise the question, his specific ruling upon that point might have been objected to, and that question reserved.

The prayer for instructions offered to prove all that was necessary to show a disseizin of the lower part of the premises in question, namely: 1st, an exclusive possession and seizin, by the tenant, or those under whom he claims, adverse

---

* This case will be found at the end of the volume.

and continued a sufficient length of time ; and 2d, sufficient evidence of notice to the true owner, and of acquiescence by him. There must be possession and seizin ; mere standing off and claiming is not enough. The possession must be exclusive ; if mixed, the seizin is according to the title. Possession is evidence of notice, according to its greater or less degree of notoriety ; but proof of actual notice is, of course, the best evidence in all cases.

The tenant showed a possession of all as distinct from a mere claim to all. An entry on part, as and for all, under a deed calling for all, gives possession of all against every body but the true owner. Upon such possession, all possessory remedies attach. It proves an averment of seizin. It is regarded by the law as a fixed right *in re,* and is essentially different from a mere claim, under color of title ; for such claim supports no remedy, even against a stranger, and exposes the party to no action by the true owner, except for slander of title.

But, it is said, that this is no possession at all as against the true owner, but a mere claim. The tenant maintains, on the contrary, that, as against every body, it is something more than a mere claim ; that, as against strangers, it is a good right, to all intents and purposes ; and that, as against the true owner, it is a possession, though not exclusive, or efficacious, unless accompanied by the circumstances of a sufficient notice that the party is in claiming the whole, and of a yielding up of possession by the true owner, in recognition of the possession and claim of the other party.

But it is certainly a possession, even against the true owner, as distinct from a mere claim. This is proved conclusively by the fact, that the true owner may sue the party entering, in trespass which he cannot do against a party merely claiming. And this he may do, not on the ground of election to regard himself disseized ; but merely on proof of possession. It is a possession, therefore, which, on the one hand, gives possessory rights, and on the other, exposes the party to possessory remedies by the true owner.

Some confusion has arisen from not distinguishing between the fact of possession, and the different effects of that fact, on the rights of others. The fact is the same, whoever may controvert it ; but its legal influence is one thing on the rights of strangers, and another on the rights of the true owner.

However this may be, it is universally admitted that an entry on part, under a claim for all, gives seizin and possession of all, unless there be an actual adverse seizin, by the true owner ; and what the tenant offered to show was precisely this, that, in the present case, there was no such continued adverse possession by the true owners. Upon notice that the tenant had entered and taken possession, claiming the whole, the true owners retired from the whole, and yielded up their possession and claim to the whole, in recognition of the possession and claim of the tenant.

To " yield " is " to give as claimed of right," — " to resign," — " to give up," — " to surrender to," — " to give way, to give place to." To " recognize " is " to admit with a formal acknowledgment." So that the words aver, that the demandants acknowledged the legal validity of the tenant's possession, and yielded up their own thereto. In other words, the language avers a complete transmutation of possession. The remarks already made show, that the possession which the tenant offered to prove was exclusive.

But the case goes further. The tenant offered to prove, not merely the visible and exclusive possession of a part, and the exercise of acts of exclusive ownership therein ; but also that this possession and exercise were taken and had with a definite and specific intent and purpose, notified to and acquiesced in by the other party, namely, with intent thereby to possess and hold the whole premises on a claim of right. An entry on land is to be construed according to its intent ; and it is particularly and directly alleged, in the present case, that the entry on part was intended to be a taking possession of the whole, and was so understood by both parties.

The tenant offered to prove, also, not merely the visible

Drake *v.* Curtis.

and exclusive possession of part, and the exercise of acts of ownership therein, with intent thereby to possess the whole, but that as to the residue, he used and enjoyed the same, by passing over it with vessels, with intent thereby to possess and hold the whole, on a claim of right. And this use and enjoyment, together with the intent which accompanied and qualified it, were fully known to and acquiesced in by the demandants.

Here, then, is a direct averment of possession and use of all the parts, according to their several natures and capacities. Doubtless, the mere sailing over flats, without proof of any claim and possession, or intent to claim and possess, does not amount to or evidence possession. All depends on the intent, and on the understanding, with which the thing is done ; as the plucking a twig from a tree may be a wholly unimportant thing, or it may be the taking possession of a manor. A circumstance, therefore, which distinguishes this case from all others connected with flats, is, that the acts of sailing over, as well as all others done by the tenant, were done under a claim of ownership, and so known to be done by the right owner. The tenant offered to prove such passings over the flats, to and from his wharf, as amounted to a use of the flats. But a use of flats, in modes and for purposes far short of and other than erections or visible structures, may imply and evidence possession for all purposes and against every body. Such is the use of waters on flats, at the ends of wharves, for vessels to float, turn, or ground on. Such, also, would be the use of flats between wharves or piers, over which vessels might sail. And it is to be kept constantly and particularly in mind, that the demandants yielded their own use, in this respect, to the possession and use of the tenant ; so that even if they sailed over the same flats, which does not appear, they did it in subordination to the tenant's claim and acknowledged right. The mere fact, therefore, that the use which the tenant offered to prove consisted only in sailing over the flats, does not prevent its evidencing the requisite possession.

The case, therefore, on the part of the tenant, presents these distinct facts and points:

1. The tenant produced a deed covering all the premises.

2. He proved an open entry under the deed, and visible and permanent possession taken of a part, with intention, by such possession of part, to take possession of the whole ; and this intention was known to and acquiesced in by the demandants.

3. He proved a use and occupation of the residue of the premises, according to its nature and capacities, with the definite intention thereby to possess the same, and this known to the demandants; thus working the legal possession thereof.

4. And, in general, that all the acts done by the tenant, with the intent and purpose which accompanied and qualified them, were distinctly known to the demandants, through the whole course of the thirty years.

5. That, with such notice, the demandants surrendered and abandoned all their own possession, in recognition of the fact, that the tenant had the possession and had it rightfully.

In conclusion, it may be observed, that when an actual possession has been taken of the whole, such as would be good against strangers, and going beyond a mere claim ; then direct and actual notice to the true owner of such possession, and its acknowledgment by him, are as effectual to bar him, as if such notice had been given, by actual edifice or structure on or cultivation of the premises. Notice by structure, or enclosure, or cultivation, is constructive ; but personal and direct notice, proved and acknowledged, is actual, and therefore higher and better than any constructive notice, and is conclusive.

*R. Fletcher,* for the demandants, replied in writing to some of the points in the written argument for the tenant.

The assumption in the argument for the tenant, that, at the trial, there was no suggestion of any deficiency of evidence to raise the question involved in the proposed instructions, is wholly erroneous. But the whole evidence is before the court, upon the report, and it is submitted, that it contains nothing

to show a yielding of possession on the part of the demandants ; so that any instruction, upon the assumption of such yielding, as a fact, would have been wholly irrelevant and aside from the merits of the case.

The position, that the facts assumed in the prayer must now be taken as proved, for the reasons stated in the argument, cannot be sustained or objected ; because the court have all the evidence in the cause before them, and if the tenant can show that the instructions moved for were relevant or pertinent, he will have the same advantage therefrom, which he could have had upon a specific ruling against him on that point.

In the argument for the tenant, it is stated, " that the prayer offered to prove all that is necessary to show disseizin of the lower part of these premises." In this sentence, and in other parts of the argument, the prayer for instructions is spoken of as an offer to prove facts. But a prayer for instructions, on evidence actually in the case, is a very different thing from an offer to introduce evidence to any particular point. In this case, the instructions were requested on evidence already introduced, and no question arises upon any offer of proof.

One of the positions taken in the argument for the tenant is, that " The tenant used and enjoyed this portion of flats by passing over it with vessels, with intent thereby to possess and hold the whole on a claim of right ; all which was known to and acquiesced in by the demandants."

There is no evidence, that the tenant used this portion of the flats in any other manner than the whole public had a right to use and did use them, by passing over them with boats and vessels. His acts, therefore, were in the exercise of a right enjoyed by him in common with all other persons, and entirely distinct from all title or claim of title to the soil. The intent, with which such acts are done, is wholly immaterial ; it can only be material, when the act done is itself the exercise of a right in the soil. Sailing over flats covered by the tide cannot be regarded, in any sense, as an act of

possession, and no intent whatever can make it so. The tenant might as well say, that he looked at the flats under a claim of right, and with intent to hold them, and thus acquired possession. Besides, there is no evidence to show that there was any such intent, on the part of the tenant, or that it ever entered his mind to hold the flats by sailing over them, or that he was sailing over them under a claim of ownership. Nothing appears to show that his intent was different from that of all others, — the demandants included, — in doing the same thing. Still less does it appear that any such intent, if it existed in the tenant, was communicated to or known by the demandant and acquiesced in by him.

SHAW, C. J. The first of these actions was a writ of entry, by Andrew Drake, to recover land, declaring on his own seizin, and the disseizin of the tenant. The demandant having died during the pendency of the action, leaving a will, purporting to devise his real estate, in terms which would embrace the premises, an application was made in writing, on the part of his devisee, for leave to come in and prosecute the suit.

This right was claimed in virtue of Rev. Sts. *c.* 93, § 14, which provides, that "in all real and mixed actions, if the demandant shall die before final judgment, his heir may appear and prosecute the suit, in the same manner, as if it had been originally commenced by him."

It was insisted, that a devisee is within the reason and equity of the statute, the object of which is to avoid unnecessary delay in the prosecution of suits. Some color is given to the argument by the terms of the statute of 1826, *c.* 70, § 1, which gave the right to come in to the heir, " or such other person as would, in case the action were abated,' be entitled to commence the like action." Had this clause been adopted in the revised statutes, the argument would have derived some further support from the Rev. Sts. *c.* 62, § 2, which provides, that a party disseized of lands may devise them, or, if, after the devise, he be disseized, they shall still pass, and the devisee shall have the like remedy by entry or

action, that the heir might have had.   The words in the statute of 1826, following the word " heir," might perhaps, by description, be held to include " devisee," as such other person.   But the statute of 1826 is in terms repealed ; and the legislature, by retaining the provision for heirs, and omitting the other description, indicate their purpose to limit it to the case of heirs.

Upon the revised statutes, which now furnish the only rule on the subject, the case is certainly not within the words of the statute, and, in the opinion of the court, is not within its reason.

An estate of inheritance passes by law to persons fixed and designated as heirs, with all the qualities under which it was held by the ancestor.   But an owner in fee may create new estates, in the whole or in any part of the land held by him ; he may devise to one for years, to another for life, (the devisee's own or that of another), remainder in tail, remainder in fee, with contingent remainders, executory devises, with uses, powers, trusts, and every other species of depending interests. This consideration gives significance to the maxim, not always apparently intelligible, that a devisee takes as a purchaser. Instead of an estate of a fixed character, cast upon one by descent, by operation of law, there may be every species of estate carved out by will, as effectually, as if done by deed on a consideration paid.   Under these circumstances, it would often be difficult for a court to ascertain who the person is, who stands in place of the heir, and whether he would be entitled to prosecute the same kind of action, which was pending at the time of the decease of the testator.   We are therefore of opinion, that it was with a just regard to the difference between the case of an heir and that of a devisee, that the legislature confined the right to appear and prosecute a real action, on the decease of the demandant, to an heir, and that it is not given to a devisee.   See *Brown* v. *Wells* 12 Met. 501.

But the main question in the case was that of disseizin. The case had before been under consideration by the court,

and various points had been decided, upon the respective titles of the parties. The demandant having established a *prima facie* title by deed and the operation of the colony ordinance, respecting the rights to lands flowed by tide waters, it was contended by the tenant, that he and his ancestors had disseized the demandant and his ancestors, and held the estate, until the statute of limitations had barred the remedy of the disseizee, and all persons deriving title under him, so that by force of such disseizin, he had acquired a complete-and indefeasible title. This being a question of fact, it was ordered to be tried by a jury; the trial to be confined to this question only. Such a trial has been had, and this case comes before the court on a report of that trial, and the questions reserved thereon.

The case then begins with the assumption, that the demandant has established a *prima facie* title, by deed, to the upland or shore bordering on tide water, to which the land in controversy would belong, as parcel, if not alienated and separated by a deed of the proprietor, or by a disseizin and lapse of time, which, in law, would work such alienation. Another assumption is, that the demanded premises consist entirely of flats, that is, land lying on the shore of a bay or cove, open to the sea, between high and low water line, covered by salt water at the flow of the tide, and left uncovered by water at the ebb. It was admitted or proved, and assumed on both sides, that the tenant was in possession of a wharf covering a portion of the flats in question, and that he and his predecessors have had a peculiar, not to say exclusive, possession of the sides of the wharf, and of the end thereof towards the sea, to place vessels thereon, attached and secured thereto, and kept there at the convenience of the owner, to receive and discharge cargoes. To this extent, the verdict was for the tenant. But, beyond this, he claimed a title by disseizin to flats lying around and beyond the structure of the wharf, and beyond the sides and end thereof, thus used for docking vessels; flats, over which the tide still flowed, unenclosed by piles driven into the ground, or by any other fixture.

The report states the evidence offered at the trial, and refers to the deeds, plans, and other evidence offered at former hearings. By this evidence, it appears, that the demandant had a wharf, bounding on Boston harbor, which he and his predecessors had extended from time to time, and used as a wharf, occupying the sides and end for the dockage of vessels, beyond which, towards the sea, lie the flats in question, constituting part of the harbor of Boston, covered with water at every flood tide.

In considering this case, it will not be necessary to go at large into the vexed subject of what constitutes a disseizin of the true owner, where he does not elect to regard himself disseized for the sake of his remedy. All the authorities agree substantially in holding, that there must be a possession taken, which is open, notorious, exclusive, and adverse to the title of the owner. The differences seem to have arisen from the application of the rule to the condition and circumstances of various states, which, in regard to the law of real property, follow the rules of the common law. It was stated in argument, that, in some respects, the rules adopted in Massachusetts, in regard to such application, differ somewhat from those of the other states. But the rules thus referred to all apply to the case of land alike in its nature and qualities, in respect to title and possession, and subject to the same rules; but they do not apply to estates in Massachusetts, lying upon creeks, coves, and other places, about and upon salt water, where the sea ebbs and flows. The title to flats, under the colony ordinance of 1641, and the constructions which have been put upon it, is of a peculiar character. By the ordinance, it is declared, that " such proprietor shall have propriety to the low water mark, where the sea doth not ebb above one hundred rods, and not more wheresoever it ebbs further, provided that such proprietor shall not, by this liberty, have power to stop or hinder the passage of boats or other vessels, in or through any sea, creeks, or coves, to other men's houses or lands." By a grant of land thus lying about or upon salt water, the grantee takes a fee in the soil of the

flats to low water, or one hundred rods, as parcel, and as incident to the upland, without words of description. The effect of the ordinance is, to make the upland extend to low water mark; proof of title to the upland, therefore, is *prima facie* proof of title to the flats. *Valentine* v. *Piper*, 22 Pick. 85, 94. But it is *prima facie* only, because, being an estate in fee, the owner may sell the flats without the upland, or the upland without the flats. *Mayhew* v. *Norton*, 17 Pick. 357. It follows, therefore, that, after a separation, by a conveyance of the flats without the land, a conveyance of the upland would not convey the flats.

But, though the riparian proprietor has thus a fee in the soil of the flats, it is limited and qualified by the proviso above stated. The construction of the ordinance, with the proviso, has been, that, although such proprietor has a fee in the soil of the flats, he holds it *sub modo;* he may build a wharf or other permanent structure upon it, or he may enclose it with rows of piles, so as to exclude other persons from sailing over it; yet, until he does so, whilst the tide is in, and the flats covered, it is public navigable water, like that which lies beyond one hundred rods, over which *all persons* have a right to pass and repass with their boats, and from which the owner has no legal right to exclude them, by notice, warning, or proclamation, or any act short of an actual exclusion, by an enclosure or wharf, with the dockage incident thereto. Any person, therefore, entering upon the flats of such riparian proprietor, with his boat or vessel, and using it for the ordinary purposes of navigation, commits no breach of the owner's close, subjects himself to no action of trespass, but is in the exercise of a right as perfect in its kind as that of the riparian proprietor. *Comm'th* v. *Charlestown*, 1 Pick. 180. Such was the nature of the estate, of which the tenant claimed title by disseizin, and a bar of any entry or action by the statute of limitations. Both parties offered evidence which is stated in the report; no evidence was offered and rejected on the ground of incompetency, or for any other cause.

35*

Upon this evidence, a prayer for instructions was presented to the judge, on the part of the defendant, which he declined giving, and this is the ground of exception. We can perceive no error in law, in withholding this instruction, because there was no evidence to call for or to warrant it. It is a good reason for declining to give the jury precise and special instructions, at the instance of either party, that they are irrelevant; that they turn on abstract questions of law, not applicable to the case in hand. Such instructions would have a tendency to divert the attention, if not to mislead the judgment, of the jury, as to the true questions for their consideration. It appears to us, confining ourselves, as we must, to the report, that there was no evidence in the case, to which several of the propositions, in the prayer for instructions, though correct in point of law, could be applied; and, therefore, the judge was right in declining to give the instructions prayed for; giving those instead, which, in his judgment, were applicable to the evidence.

It was urged in the able argument for the tenant, that, as the judge refused to give the instructions, we are now to assume that the facts thereby supposed were true, in order to test the correctness of the propositions contained in the instructions, in point of law. But we cannot consider such to be the course of proper practice. Where evidence is offered, with a view to prove a certain state of facts, and the evidence is rejected by the judge, on the ground, that it is not pertinent to the issue, and that the facts, if proved, could not avail the party tendering it, then, certainly, in revising the decision, we are bound in justice to assume, that the evidence, if it had been admitted, would have proved the case stated. But it is far otherwise, where the evidence is received, and the judge is called on to state the law in reference to the facts, which, in the opinion of the jury, the evidence proves. There must be competent and relevant evidence, tending to prove a state of facts; and, then, the judge must instruct the jury, hypothetically, that if, in their judgment, certain facts are proved by the evidence,

then such would be the rule of law, applied to the facts so proved, and such the conclusions in which it results, affecting the rights in controversy. In no other way, where a general verdict is to be given, can the judge direct in matter of law, for which he is responsible, and yet leave the jury free to judge, as they are bound to do, upon the weight and effect of the evidence. It is not the duty of the judge, — it has sometimes been denied that he has the right, — to state his opinion upon conflicting evidence, whether it is or is not sufficient to establish certain facts, but only to state how each fact, if proved, would apply in its effect on the right in issue.

But we are further of opinion, that, as applied to the subject matter, and the evidence in the case, the instruction prayed for could not be given. The object was to prove a title to the flats by disseizin ; it being admitted that the legal title was in the demandant. It was admitted in the tenant's argument, that there must be a seizin and possession proved, on the part of the tenant, and that mere claiming was not enough ; and, also, that the possession must be exclusive, for, if mixed, the seizin is according to the title. It may be proper to add another familiar proposition, though not expressly conceded in the argument, that, where there is no actual and exclusive possession in either, the constructive possession follows the title, and is in the true owner.

The first clause, in the prayer for instructions, is this :

" That if the jury are satisfied, on the whole evidence, that the tenant and those under whom he claims entered upon and took and held visible and exclusive possession of part of the demanded · premises, and exercised acts of open and exclusive ownership therein, and, as to the residue of the premises, used and enjoyed the same, by passing over them with vessels to and from his wharf, with intent thereby to possess and hold the whole premises on a claim of right, and by regular paper title up to the present line," &c. The sentence is not carried out, but as the prayer afterwards speaks of such " entry and possession," the request was in effect to instruct the jury, that such entry on a part, with

a claim to the whole, was an entry upon and possession of the whole.

The proper business of jurisprudence is to apply rules of law, which are necessarily expressed in general terms, to the circumstances of each case, with such modification and adaptation, as the particular case requires. It is under this consideration, that the pertinency and correctness of the instruction asked for are to be examined.

When this proposed instruction speaks of the whole and of part of the premises, there is nothing to indicate, that the premises were not all of one kind and quality of estate. But when applied to the subject matter, wharf and flats, and substituting the specific terms of the actual case, in place of the general terms of the proposed one, the instruction in question, we think, would stand thus : If the jury are satisfied, on the whole evidence, that the tenant, &c., entered upon, and took and held visible and exclusive possession of the wharf, and exercised acts of open and exclusive ownership in that wharf, and, as to the flats, between the wharf and low water line, used and enjoyed the same, by passing over them with vessels, when covered with tide water, to and from his wharf, with intent thereby to possess and hold the flats as well as the wharf, on a claim of right, and by regular paper title up to the present line, it would be an entry upon and possession of the flats.

This, we think, would not have been a tenable, legal proposition. Sailing over the flats, which every one had a legal right to do, would not have been a *pedis possessio*, an entry, or the first step towards getting possession. Every disseizin is a trespass, although every trespass is not a disseizin. When, therefore, the tenant's predecessor first passed over these flats, with a boat, he had a perfect right to do so, under the common right of way for vessels. Without such right, it was a trespass and a wrong. Now it is perfectly well settled, that when an act may be either rightful or wrongful, it is not for the actor to say, that it was done with a wrongful intent, and to claim rights under it ; his act shall be attributed to his right.

However long such a use is continued, it can confer no possession ; and whatever may be the intent of the party, or whatever his declarations, it cannot render that an entry and an act of possession, which is only the use and enjoyment of a common right of way. But, could such a use of the flats, by sailing over them, be regarded, in any view, as a possession, it is neither adverse nor exclusive. No action would lie against the party thus sailing over the flats, and no power would exist, on the part of the owner, to prevent his entry, or to remove him therefrom. These are the tests, to show that such act of sailing would not amount to a technical breach of the owner's close. It is impossible to deny, that the owner has an equal right with the rest of the community to pass over these flats ; if the tenant therefore could have any possession, it would be but a mixed possession, in which case, the legal and constructive possession follows the title.

These considerations apply exclusively to the flats ; the wharf stands on different grounds, and, in regard to that, the instruction is not objected to. Then, if there were no entry and no possession of the flats, all the other acts stated amount to a mere parol claim, not qualifying any act done. And, if we are right thus far, it seems hardly necessary to pursue this prayer for instructions further. If there were no entry and possession, or if there were no adverse and exclusive possession, there could be no notice to the demandant of such adverse possession, and the claim must have been a mere parol claim. So, if by conveyances and other equivalent acts, the demandant, or those, &c., recognized and yielded to such claim and possession. If, by the use of the term "conveyances," were intended any deed affecting the title of the demandant by way of grant, release, or estoppel, this would be a question of documentary title, and not a question of disseizin. We understand, therefore, by this expression, conveyances between the demandant or his predecessors, and third persons, containing express or implied admissions. This would amount to nothing more than parol admissions insufficient to affect title. Any other case of recognition of, and

yielding to, the tenant's claim and possession, could not be shown, until such adverse possession had been established.

As to yielding or resigning by the demandant, if it were a mere claim in words, without act done on the part of the tenant, and an admission of that claim, in words, on the part of the demandant, it would be no bar or estoppel; it would be a parol release, inoperative without deed. Such yielding and submission, to be of any legal effect, must be to some act of entry and possession. Acquiescence, even in an open and visible act of entry or possession done by another, does not render such entry or possession adverse, unless the party, whose acquiescence is claimed, could have resisted it, or maintained an action upon it. *Gray* v. *Bartlett*, 20 Pick. 186.

Perhaps this case, of an estate consisting partly of flats built upon and enclosed, of which the owner may have open, adverse, and exclusive possession, as in other cases of solid land, and partly of open flats, upon which, until built upon and enclosed, all persons have a right of passage, with vessels, may be illustrated by a familiar case. By the law of Massachusetts, the laying of a highway over land does not divest the title of the owner; he is then seized in fee of the land, subject to the easement. Suppose the case of a highway laid over a farm. A person, not in possession, and not establishing a title by deed, has claims upon the whole farm against the owner; and, for the purpose of asserting such claim, he passes over such highway, declaring to the owner and to all other persons, that it is his intent and purpose to consider this act as an entry and adverse possession, as against the owner. The soil under the way is part of the premises; he therefore enters upon a part of the premises, with intent to take possession of the whole, and with full and express notice of such intent to the owner, and uses the way constantly with a like intent thirty years. Inasmuch as the owner could not prohibit him from such entry upon and use of the way, or sue him for it, his acquiescence would impair none of his rights; such use of the way would not be an exclusive, or an

adverse, or an actual possession of the residue of the farm. The cases are analogous.

These difficulties, in regard to the title to flats, under the colony ordinance, are not now disclosed for the first time ; they are intrinsic and unavoidable. In most other cases of controverted claims to real estate, defective titles may be strengthened, inchoate ones perfected and made certain, by actual possession, more or less exclusive, — by constructive possession, under deeds recorded or otherwise, — by presumptions of grant, — and by other ways, by means of which time becomes the great quieter of titles. But, in regard to flats, it is far otherwise. Most of the tracts of flats, within the commonwealth, are without value ; a large portion of the residue of very little value ; a small portion. only, from the progress of commerce, has come to be of great value ; but the same rules must apply to all. The first great difficulty is in ascertaining, in each particular case, the direction of the lines, to which the riparian proprietor is entitled, as between him and his conterminous proprietor. *Valentine.* v. *Piper*, 22 Pick. 95. The rule is simple, but it is rendered complicated and difficult of application, by the infinitely diversified forms which the sea-shore may present. Add to this, that, by the same law, which vests the fee in the riparian proprietor, a general right of way is reserved to the public, until built upon, or actually enclosed, so as to exclude navigation, and it is obvious, that the ordinary presumptions and conclusions of law, arising from possession and use, can have no application, in regard to open and unenclosed flats. The constant use of such flats, by one not entitled to claim and hold them as the riparian proprietor, for the ordinary purposes of navigation, can give no exclusive or adverse possession ; and such has been the law from the first settlement of the country to the present time.

*Judgment on the verdict for the demandant.*